[No. 19288.    Department One.—February 7, 1894.]

A. W. EAMES, RESPONDENT, *v.* W. W. CROSIER ET AL., APPELLANTS.

ACTION UPON NOTE—PLEADING—OWNERSHIP—ASSIGNMENT.—Although an allegation in an action upon a note that the "plaintiff is now the holder and owner of the said promissory note" *is not sufficient in itself to show* ownership in the plaintiff, yet, where it is also alleged that the note when made was delivered to the payee named therein, and that thereafter such payee for value, and before maturity, assigned the note by indorsing the same in blank on the back thereof, such allegation, taken in connection with the allegation of possession, is sufficient to show the plaintiff's title.

ID.—EFFECT OF INDORSEMENT IN BLANK.—The effect of indorsement in blank *is to make the paper payable to the holder, not as indorsee, but as bearer.*

ID.—PURCHASE FROM BONA FIDE HOLDER—PLEADING—VARIANCE.—Where the complaint avers that the note was indorsed in blank and delivered by the payee to the plaintiff, and the answer denies such delivery, and alleges that the note was indorsed and delivered by the payee to a third party, who is alleged to be the owner of the note, and the evidence shows that the note was indorsed in blank by the payee and delivered to such third party, who, before the maturity thereof, assigned and delivered it to another person, and that the latter, after maturity, sold and transferred it to the plaintiff, and the court finds that the assignor of the plaintiff purchased, received, and paid for the note in good faith, without notice of the facts pleaded in the answer, *as a defense,* such evidence and finding are not outside of the issues raised by the pleadings.

ID.—NOTICE OF FRAUD IN PROCURING NOTE—BURDEN OF PROOF.—Upon proof, by the defendant, of fraud or illegality in the inception of the note,

the burden is cast upon the indorsee to show that he is an innocent holder, which he may do by showing that he purchased the note before maturity, or from an innocent indorsee for value, in the usual course of business; and when he has done this, unless the evidence shows that the note was taken by plaintiff under circumstances creating the presumption that he knew the facts impeaching its validity, the burden is cast upon the defendant to show that the plaintiff took the instrument with notice of the defendant's equities.

ID.—TRANSFER AFTER MATURITY—PROTECTION OF HOLDER.—One who takes a note when overdue, from a prior holder who took the note for value before maturity, without notice of any infirmity in it, acquires as good a title as that of the prior holder; though he must show that the prior holder took the note for value before maturity.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Carran & Pillsbury,* for Appellants.

*Charles Lantz,* for Respondent.

PATERSON, J.—The plaintiff recovered judgment in the court below for the sum of six hundred and eighty-one dollars and fifty-two cents and costs of suit on two promissory notes for two hundred and fifty dollars each, dated May 9, 1889, payable in six and twelve months respectively after date.

It is claimed by the appellants that the second count does not state a cause of action. The point made is that it is insufficient to allege that the "plaintiff is now the holder and owner of said promissory note." The point would be well taken if this were the only allegation showing ownership in the plaintiff. It is alleged, however, that at the time the note was made it was delivered to Bandholt, the payee named therein, and "that thereafter J. F. Bandholt, for value and before maturity, assigned said note by indorsing same in blank on the back thereof." This, taken in connection with the allegation of possession, was sufficient to show the plaintiff's title, the effect of an indorsement in blank being to make the paper payable to the plaintiff, not as an in-

dorsee, but as bearer. (*Poorman* v. *Mills,* 35 Cal. 120; *Curtis* v. *Sprague,* 51 Cal. 241.)

It is alleged in the first count that the note was indorsed in blank and delivered by Bandholt to the plaintiff. But the findings and evidence show that the note was indorsed in blank by Bandholt, the payee, and delivered to one Runels, who, before the maturity thereof, assigned and delivered the same to M. M. Talmage; and that the latter afterwards sold and transferred the note to the plaintiff. It is claimed by appellant that, inasmuch as the plaintiff acquired the note after maturity, he can recover only upon showing title in a prior *bona fide* holder, and that this cannot be done because of the allegation of a direct assignment of the note from Bandholt to himself. The court found that Talmage "purchased and received and paid for said notes in good faith, without notice of any of the facts stated in the answer." This finding, it is claimed, is outside of the issues raised by the pleadings; and this would be the fact if there were nothing more in the pleadings on the subject than the allegation of the complaint that the note was indorsed and delivered by Bandholt to the plaintiff. In the answer, however, it is denied that Bandholt ever assigned or delivered said note to the plaintiff, and it is alleged that the note was indorsed and delivered by Bandholt to Runels, and that the latter " is still the owner of said note." The finding, therefore, is not outside of the issues raised by the pleadings.

The court found, in accordance with the allegation of the answer, that the defendants were induced to make and deliver the notes by false representations as to the value and character of certain lands, but that Talmage " purchased and received and paid for said notes in good faith without notice."

Appellant contends that this finding that Talmage " purchased and received and paid for said notes in good faith, without notice," is not supported by the evidence. It is admitted that the notes were acquired by both Talmage and the plaintiff for value, but it is

claimed that proof on the part of the defendants that the notes were procured from the defendants through fraud, cast upon the plaintiff the burden of showing that the plaintiff or Talmage purchased without notice of the equities set up in the answer. Authorities are cited which support this contention, but later decisions qualify the rule as to the burden of proof. Upon proof by the defendant of fraud or illegality in the inception of the note, the burden is cast upon the indorsee to show that he is an innocent holder. This the latter may do by showing that he purchased the note before maturity, or from an innocent indorsee for value, in the usual course of business. When this is done, unless the evidence shows that the note was taken by the plaintiff under circumstances creating the presumption that he knew the facts impeaching its validity, the burden is cast upon the defendant to show, if he would defeat the plaintiff in his action, that the latter took the instrument with notice of the defendant's equities. This view is entirely consistent with what was said by the court in *Jordan* v. *Grover*, 99 Cal. 194. The statement of the learned justice who wrote the opinion therein, that the plaintiffs, in order to sustain the burden cast upon them, must show that they purchased the note before maturity, in good faith, for value, in the usual course of business, and "under circumstances which create no presumption that they knew the facts which impeach its validity," is merely appositional to the rule which had already been stated, that "where fraud or illegality in the inception of the note is shown by the maker, the burden of proof is then cast upon the indorsee to show that he is an innocent holder." As before stated, this burden is discharged, and a *prima facie* case is made in his favor, when he shows that he purchased for value in the usual course of business. In *Davis* v. *Bartlett*, 12 Ohio St. 541, 80 Am. Dec. 375, the court, referring to *Monroe* v. *Cooper*, 5 Pick. 412, cited by appellants herein, said: "And the judge refers to the case of *Monroe* v. *Cooper*, 5 Pick. 412, as particularly in point to sustain

this view. If to show that he purchased the negotiable paper in the usual course of trade, before due, and for a valuable consideration, in such a case, be understood by the judge a fair *prima facie* showing that he acted honestly and without a knowledge of the fraud, the correctness of the remark must be admitted; but if the remark is to be understood as meaning more, it must be regarded, I think, at variance both with authority and correct reasoning"; and, in summing up, the court used the following language: "But it is certain that it cannot be maintained, either upon authority of the cases, English or American, that from the fact of the defendants proving a fraudulent diversion or transfer of the paper, it then becomes incumbent upon the plaintiff to prove, not only payment of value and a purchase in the usual course of trade, but also his own ignorance of the fraudulent diversion or transfer." In 1 Daniel on Negotiable Instruments, 4th edition, section 819, the author says, speaking of the holder: "He makes out a *prima facie* case by proving that the instrument was indorsed to him for value before maturity. Nothing else appearing, a presumption arises that he purchased the note in good faith, without notice of the fraud, because it is not likely that he would give full value for a note which he believed to be fraudulent, taking the hazard upon himself, and because it would be difficult to prove good faith in any better way. These, at least, are the conclusions of well-considered decisions which rest, as we think, on sound reasoning, but in others the courts have indicated a more stringent rule and a disposition not to relieve the plaintiff of the burden of proof by mere proof that he gave value. Unless there were circumstances which seemed to bring home to him notice of the fraud or illegality imputed, the requirement of further proof than the giving of fair value seems unreasonably harsh and exacting." This, we think, states the true rule. No circumstances were shown in this case which would impute to the plaintiff, or to Talmage, any notice of fraud, and it is in evidence that Talmage paid four hundred

and fifty dollars, and that plaintiff paid five hundred dollars for the notes. We have referred to Talmage particularly, because to recover on the first note, plaintiff, who took the note when overdue, must show that a prior holder took the note for value before maturity. It is a settled principle that if the party who transferred the instrument to the holder took the note for value, and before maturity, unaffected by any infirmity in it, the holder acquired as good a title, although he took the note when overdue.

The findings support the judgment, and we find no error in the record. The judgment and order are therefore affirmed.

Garoutte, J., and Harrison, J., concurred.