retention, therefore, of this money by the plaintiffs, as liquidated damages for the breach, did not satisfy the obligation under the lease for rent that accrued and became due upon the 1st day of April and the 1st day of May, 1895, and certainly would not be a bar to an action brought under this undertaking, by which these defendants had agreed to pay to the plaintiffs the rent of the premises which accrued subsequent to the execution of the undertaking, and before the final termination of the lease. We think, therefore, that the plaintiffs are entitled to recover from these defendants the rent for the month of May, 1895, and that the verdict must be reduced from $4,500 to $2,250 and interest; and judgment must be directed for the plaintiffs for this amount, with costs in the court below and in this court. All concur.

## FIRST NAT. BANK OF SALAMANCA v. WESTON.

(Supreme Court, Appellate Division, Fourth Department. December 18, 1897.)

1. BILLS AND NOTES—BONA FIDE PURCHASER—QUESTION FOR JURY.
    In an action against a partner on a note indorsed by the firm, and given to plaintiff in renewal of part of a debt evidenced by a prior note executed in the firm name and discounted by plaintiff at its face value for the payee, the evidence showed that such original note was made by one partner outside the firm business, for the accommodation of the payee, but no evidence of notice thereof to plaintiff at the date of the discount. *Held*, that the question whether plaintiff was a bona fide holder was for the jury, though the circumstances attending the discount were brought out by testimony of plaintiff's president, who was an interested witness.

2. WITNESS—IMPEACHMENT.
    A party calling a witness may show facts contrary to his testimony.

Action by the First National Bank of Salamanca against Abijah Weston. A verdict was directed for defendant, and plaintiff moves for a new trial on exceptions ordered heard, in the first instance, in the appellate division. Granted.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Frederick W. Kruse, for plaintiff.
J. H. Waring, for defendant.

HARDIN, P. J. Plaintiff brings this action to recover upon a promissory note for $700, set out in the complaint made by George Ramsey, and indorsed by Weston Bros., which was dated December 29, 1891, and was drawn for $700, and given to the bank in renewal of a previous indebtedness held by it. The indebtedness held by the bank originated in 1891, when, according to the testimony, Ramsey carried to the plaintiff's bank and had discounted a promissory note for $3,000, dated June 29, 1891, made by Weston Bros., and indorsed by him and others, which note was renewed from time to time, and sundry payments made thereon, until the indebtedness was reduced to the sum of $700, represented by the last note in the series executed and delivered to and held by the plaintiff at the time of the commencement of the action. At the time the original note was made

and discounted by the plaintiff the firm of Weston Bros., of which the defendant was a member, existed and continued until its dissolution, on January 5, 1892. Evidence was given tending to show that the original note was executed in the name of the firm by W. W. Weston, and that it was delivered to Ramsey for his accommodation, and that he carried the same to the plaintiff, and had the same discounted for his sole accommodation and benefit. At the time the note was discounted, and prior thereto, Ramsey had an interview with Wellman, then the cashier of the plaintiff, and who died in 1894. When the plaintiff discounted the original note it advanced $3,000, the face value of the note, by issuing its draft on the Park National Bank, payable to the Hanover National Bank, to which latter bank it transmitted the draft at the request of Ramsey, and the same was charged to the plaintiff and paid by it in the usual course of business. The case does not clearly show how or in what manner the discount upon the original note was paid. The plaintiff's president, Wait, testifies to seeing the original note in the possession of the bank, and that it remained there until it was renewed, and the several renewals following are enumerated by the president, ending with the last renewal note, which is the $700 note mentioned in the complaint, upon which the plaintiff seeks to recover. After the defendant gave evidence tending to show that the original note of $3,000 was made by William Weston in the firm name, outside of the business of the firm, and as an accommodation note for the benefit of Ramsey, and that he received the avails thereof, and that the firm never had any of the proceeds of the note, it was incumbent upon the plaintiff to show that it was a holder for value and in good faith. To meet that burden, the plaintiff gave evidence of the circumstances attending, so far as it could, the discount of the original note. The plaintiff's banking institution is located at Salamanca, which is some 18 miles from the residence of Ramsey, and some 22 miles from the business office of Weston Bros. There is no evidence that the bank, at the time it discounted the note, had actual knowledge or any express notice of the fact that the original note was made to raise money for the benefit of Ramsey, and not in the usual course of the business of the firm. After considering all the evidence that relates to the ownership of the plaintiff, its acquisition of the original note, and the advance of the full face value thereof to the party who presented the note to it for discount, which circumstances largely depend upon the testimony of the president of the plaintiff, who was a stockholder in the bank, and the testimony of George Ramsey, and the circumstance that the bank charged 8 per cent. for discount, that being claimed to be the current price to persons other than customers of the bank, the question was to be determined whether the plaintiff was a holder for value, in good faith, without knowledge or notice that the note taken did not originate in the business of the firm. Impliedly, the trial judge construed the evidence in favor of the contention of the defendant. Notwithstanding Ramsey had been called as a witness in the first instance by the plaintiff, it was competent for the plaintiff to prove any facts contrary to his testimony. Coulter v. Express Co., 56 N. Y. 585. In view of the circumstance that

the credibility of the plaintiff's president was to be determined after considering his interest in the event of the action, and in view of all the circumstances disclosed relating to the plaintiff's ownership of the original note, it may well be said that a question of fact was presented which should have been passed upon by the jury.    If, upon the evidence as it was furnished, the jury was enabled to find that the plaintiff was a bona fide holder, having no knowledge or notice of the diversion of the note, and having advanced the full value therefor, it might have reached a conclusion favorable to the plaintiff.    If such conclusion was reached by the jury, then under the circumstances attending the renewal of the notes, and the fact that the $700 note on which the plaintiff seeks to recover was a part of the indebtedness represented by the $3,000 note, a conclusion might have been reached by the jury favorable to the plaintiff.    American Exch. Nat. Bank v. New York Belting & Packing Co., 74 Hun, 446, 26 N. Y. Supp. 822, affirmed 148 N. Y. 698, 43 N. E. 168;  Joy v. Diefendorf, 130 N. Y. 6, 28 N. E. 602;  Cheever v. Railroad Co., 150 N. Y. 59, 44 N. E. 701;  Bank v. Glover, 88 Hun, 4, 34 N. Y. Supp. 496.    The foregoing views lead to the conclusion that the trial judge fell into an error in refusing to submit the case to the jury.    The plaintiff's exception to such refusal was well taken, and a new trial should be ordered.

Plaintiff's exceptions sustained, and a new trial ordered, with costs to plaintiff to abide the event.    All concur in the opinion, except FOLLETT, J., who concurs in the result.