[Civ. No. 18179.   Second Dist., Div. Two.   Mar. 21, 1951.]

JOHN G. ANDERSON et al., Respondents, v. PAUL M. LEE, Appellant.

Hy Schwartz for Appellant.

Frye & Yudelson and Collman E. Yudelson for Respondents.

MOORE, P. J.—In a complaint charging appellant with usury respondents demanded that their note payable to appellant in the principal sum of $7,500 and their trust deed securing its payment be reformed to show $5,000 as the principal of their debt, that the aggregate installment payments already made on the note be credited as payments on the principal, and for general relief. The facts were found as alleged by respondents and the decree adjudged that (1) the transaction involved was usurious, in violation of the initiative Usury Act of 1919 (2 Deering's Gen. Laws, Act 3757) and section 22, article XX of the Constitution; (2) the principal sum of the debt due appellant is reduced to $5,000, less $1,650, the aggregate payments made on the principal; (3) the loan shall henceforth bear no interest and is credited with treble the sum of $437.25 already paid as interest.

The findings disclose that in August, 1948, respondents borrowed $5,000 from appellant and gave their note and a trust deed to secure its payment in monthly installments. For the use of the $5,000 appellant demanded the sum of $2,500 over and above the interest, the rate of which was not clearly expressed, making the principal of the note $7,500 with interest at 7 per cent per annum on the loan. As a part of appellant's scheme to evade the operation of the usury laws appellant and his broker, defendant Jack Freehill, opened

an escrow at a bank on August 4, 1948. In it the note for $7,500 and the trust deed were deposited together with escrow instructions to be signed by appellant. Such instruments were in favor of Lillian M. Stout, mother of Mrs. Anderson, and they were to be executed by respondents. But before they had been signed by respondents, appellant examined and initialed them on August 12, 1948, as well as his escrow instructions. While such instructions refer to Mrs. Stout as lender, she had no interest in the transaction or in the moneys to be acquired by respondents, but was an innocent dupe of appellant and his broker and was their dummy for the purposes of effectuating the unlawful purpose and of creating an aura of legality for the usurious loan. Mrs. Stout had not visited the escrow department, approved the form of the note and trust deed or signed the escrow instructions prior to the day of appellant's approval of the writings. Besides the trust deed, appellant required respondents to execute as additional security a chattel mortgage on the furniture and furnishings located on the real property described in the trust deed and to have it recorded along with the latter instrument in the official records of Los Angeles County. No actual loan was ever made by Mrs. Stout to respondents and all the documents deposited in the escrow purportedly opened for them and the asserted payment of $2,500 to respondents outside of escrow were pretense only. Mrs. Stout had no money to loan. She had met defendant Freehill while attempting to find a lender for respondents. After deducting $300 commission paid to Freehill and $98.45 escrow charges, respondents received the net sum of $4,601.55 from the transaction.

Appellant seeks reversal of the judgment on numerous grounds but emphasizes the want of evidentiary support for the finding that he made a "loan" to respondents. He earnestly insists that he was a holder in due course of a negotiable instrument, purchased prior to maturity for a valuable consideration paid in good faith and without notice of any infirmity in the instrument or defect in the title of his transferor, citing Civil Code, section 3133.*

---

*"A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That it is complete and regular upon its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

However, upon substantial evidence the trial court determined that Lee did not buy the instrument in good faith pursuant to Civil Code, section 3137, which provides: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

An indorsee is charged with knowledge of a vice or defect in the instrument of his purchase where the circumstances are such as to justify the conclusion that the failure to make inquiry arose from a suspicion of such defect. (*Christian* v. *California Bank,* 30 Cal.2d 421, 425 [182 P.2d 554] ; see *Popp* v. *Exchange Bank,* 189 Cal. 296, 303 [208 P. 113] ; *Jordan* v. *Grover,* 99 Cal. 194 [33 P. 889].)

Had Lee inquired of Mrs. Stout or the Andersons, he would have learned that the mother had advanced no money ; that the Andersons had received none, and that neither had been apprised of the form the transaction was to take. Notwithstanding his means of acquiring an intimate knowledge of the events that preceded the opening of the Stout escrow and his inability to obtain a written acknowledgment by respondents of their debt in the sum of $7,500 he continued with the transaction, signed the requisite documents, initialed the note in the Stout-Anderson file and paid money into the escrow, although neither the $7,500 note, the trust deed nor the escrow instructions between Mrs. Stout and respondents had been executed. Moreover, while witnessing those insignia of a precarious promissory note he was conscious of his own agreement to purchase it for an inadequate consideration.

While an offer to sell a secured note for two thirds its value is not itself sufficient to raise an inference that the instrument is tainted, it is a circumstance fairly to be considered in determining the question of a buyer's good faith. (*Boyd* v. *Bearce,* 48 Cal.App. 46, 50 [191 P. 560] ; *Jordan* v. *Grover, supra,* 196.)

Viewing the evidence as a whole it cannot be said that the findings are arbitrary or without ample support. Parties are free to buy and sell promissory notes as they may sell and buy other property. When the bona fides of the purchaser of a promissory note is established the extent of his profit is of no concern to the usury law. But when the facts indicate that the purchaser of a security had knowledge of an infirmity, or a grave suspicion thereof, his

transaction is closely scrutinized to find the requisite good faith. It is the substance, not the form, that is controlling. (*Milana* v. *Credit Discount Co.*, 27 Cal.2d 335, 340-1 [163 P.2d 869, 165 A.L.R. 621] ; *Batchelor* v. *Mandigo*, 95 Cal.App. 2d 816, 820 [213 P.2d 762].) Piercing the trappings of the transaction in the instant cause it is manifest that its essence was an attempt to evade the usury laws and to exact a $2,500 bonus from the needy respondents on a $5,000 loan. The court's determination that appellant acted in bad faith cannot be dispelled by mere anguished cries of disappointment.

Appellant argues also that the court's failure to find upon some 10 allegedly material issues is prejudicial error. Despite the protest it must be said that upon a large percentage of those issues the court made findings while others are in regard to immaterial matters. Appellant's real concern seems to be that such findings are adverse to him. No useful purpose would be served in discussing his numerous subordinate contentions at length. The spine of his appeal is disposed of by an affirmance of the finding that he did not in good faith purchase respondents' note in due course.

■ Appellant's last argument is that the judgment is excessive in crediting upon the principal of the note the sums of $1,650 and $1,311.25. The former is the total payment made. The latter is the treble of interest collected from respondents where the entire amount of interest actually paid upon the loan has been ascertained. Such credits are authorized by the initiative act. (Usury Law, § 3, 2 Deering's Gen. Laws, Act 3757, Stat. 1919, p. 83; *Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609, 617 [254 P. 956, 255 P. 805, 53 A.L.R. 725].) Since usury was established it was proper for the court to strike from the note the amount of the bonus and to award the plaintiffs the treble of the interest payments actually made. (*Haines* v. *Commercial Mortgage Co.*, *supra*, p. 617.)

Judgment affirmed.

McComb, J., and Wilson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 17, 1951. Schauer, J., voted for a hearing.