The PEOPLES BANK OF AURORA, Colorado, Plaintiff in Error,

v.

Edward HAAR, Defendant in Error.

No. 40916.

Supreme Court of Oklahoma.

Dec. 13, 1966.

Ogden, Ogden & Williams, Guymon, for plaintiff in error.

Frank E. Hensley, Tryon, Sweet & Hensley, Guymon, for defendant in error.

PER CURIAM.

The parties on this appeal hold the same position they held in the trial court. The plaintiff is The Peoples Bank of Aurora, Colorado. In April 1963 there were pre-

sented to the plaintiff two checks drawn by the defendant, Edward Haar. These checks were payable to the order of Western Aircraft Leasing of Aurora, Colorado. One check, in the amount of $4,000.00, was drawn on the First State Bank of Elkhart, Kansas. The other check, in the amount of $3,500.00, was drawn on the City National Bank of Guymon, Oklahoma. When these checks were presented to the plaintiff by the payee, or persons purporting to be officers of the payee, plaintiff called the City National Bank of Guymon, Oklahoma, talked with one of its officers and inquired about the financial status of the defendant. The plaintiff then cashed the $3,500.00 check and allowed the payee to deposit the $4,000.00 check in an account. The bank allowed immediate credit on this check.

The defendant had drawn these two checks and delivered them to the payee on April 3, 1963, as payment for some unspecified interest in Western Aircraft Leasing Company. The defendant then became concerned that he would not receive the interest he bargained for and on the 3rd or 4th day of April, 1963, he requested that each of the banks on which the checks were drawn stop payment.

In the regular channels of banking plaintiff was advised payment had been stopped, and immediately froze the account to which the $4,000.00 check had been deposited. The plaintiff applied the remaining funds in the account to cover the advance it had made on the $3,500.00 check, and the credit given on the $4,000.00 check. The amount was insufficient to reimburse the bank for these advances and credit and, after some payments were made by the payee to the plaintiff, the bank was still due $2,299.40.

In the trial court the plaintiff filed its action against the defendant alleging it was a holder in due course of the two checks. The case was tried before a jury and the jury's verdict was in favor of the defendant. A judgment was entered by the trial court on the basis of this verdict.

The plaintiff alleges several grounds of error on the basis of the evidence. It claims the court should have sustained its demurrer to the evidence or directed a verdict in its favor, and that the defendant's evidence was not sufficient to support the verdict for defendant.

The basic question presented by this case is whether plaintiff is a holder in due course. If it is, then it is entitled to recovery because 12A O.S.1961, § 3-305 provides that a holder in due course takes an instrument free from all defenses of any party to the instrument with whom the holder has not dealt. The plaintiff did not deal with the defendant. If the plaintiff is not a holder in due course, then the defendant is entitled to judgment because a maker may stop payment on a check prior to its payment.

12A O.S.1961, § 3-302, defines a holder in due course. This statute provides three elements to qualification as a holder in due course. The holder must take the instrument:

"(1) (a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

To determine the sufficiency of the evidence and what duties the trial court had as to the plaintiff's demurrer and request for a directed verdict, it is necessary to examine the evidence relating to the three elements of a holder in due course.

The first requirement is that the instrument be taken "for value." It is clear that the defendant's checks were taken by the plaintiff for value. Two sections of the Oklahoma Commercial Code, 12A O.S.1961, § 1 et seq., state that acquisition of a security interest in an instrument constitutes taking for value:

1. Section 3-303 provides that a holder takes "for value" when it acquires a security interest in the instrument otherwise than by legal process.

2. Section 4-209 says that a bank has given value, for purposes of determining

its status as a holder in due course, if it has a security interest in an item.

■ 12A O.S.1961, § 4–208, enumerates several instances in which a bank is deemed to have a security interest. Two of these are pertinent:

1. When an item is deposited in an account, to the extent to which credit given has been withdrawn or applied;

2. When an advance is made on an item.

The evidence shows without contradiction that the $4,000.00 check was deposited and the plaintiff allowed credit on this item. The plaintiff therefore had a security interest to the extent to which credit was withdrawn. The evidence further shows without contradiction that the bank advanced and paid the $3,500.00 check and thus had a security interest therein. The plaintiff therefore was a holder "for value." A case supporting this analysis of the Commercial Code provisions and the fairness of that conclusion is Universal C. I. T. Credit Corp. v. Guaranty Bank & Trust Co. (D.C.Mass.), 161 F.Supp. 790.

■ This leaves for consideration the elements of good faith and lack of knowledge of a defense. The defendant alleged that the two checks were not supported by actual or legal consideration. His evidence indicated that, after he gave the checks to the payees, he became concerned that he had not, or would not, receive the unspecified interest for which he gave the checks. The evidence did not show clearly what his agreement was with the payees, but it did indicate the possibility of a defense as between the defendant and the payees. This is all that is required by the law to place upon the plaintiff the burden of proving that it was in good faith and had no knowledge of the defense. See Beesley v. Wm. A. Nicholson Co., Inc., 148 Okl. 270, 298 P. 607, and 12A O.S. 1961, § 3–307. The plaintiff's evidence, though not as direct as it probably could have been on these elements, tended to show both good faith and lack of knowl-

edge. The plaintiff's evidence included the following:

■ 1. The check for $3,500.00 was drawn on the City National Bank, Guymon, Oklahoma. The assistant cashier of the plaintiff testified that before cashing this check or giving credit on the $4,000.00 check he called the City National Bank and talked with a vice president. His testimony was:

"* * * I talked with a Mr. Glisson, who is vice president, regarding these checks. I gave him the amount of the checks, the circumstance surrounding the checks and asked if the check was good. He said that it was. He also volunteered information regarding Mr. Haar and his background in the community and indicated that we would have no problem with any checks which were signed by Mr. Haar, he certainly was a substantial individual, he had plenty of money to cover the check and no problem at all if we cashed it. On this basis we then cashed the check for $3,500.00."

2. The testimony of the assistant cashier also included the following question and answer:

"Q. When did you first discover there was anything wrong with the checks?

"A. We received a phone call from the Colorado National Bank of Denver, Colorado, who is our clearing bank, on the 9th of April. They indicated to us that a check was being returned in the amount of $3,500.00. This is the reason they called us, being our correspondent bank."

Previous testimony proved that the check had been cashed on April 3rd. We conclude that the evidence was strong enough to meet the plaintiff's burden of proof.

■ The defendant denied plaintiff was a holder in due course, but introduced no evidence of bad faith or knowledge of the defense raised by the defendant. This being true, it is a difficult question as to whether the plaintiff was entitled to a directed verdict. The plaintiff's evidence

indicates that plaintiff was in good faith and had no knowledge of a defense, but we cannot conclude that reasonable men would not differ in this decision. The plaintiff's evidence was rather indirect and consisted only of testimony by the bank itself through its employees. In such instances it is best for the jury to determine the question. See Beesley v. Wm. A. Nicholson Co., Inc., supra; Sharp v. Young, 182 Okl. 596, 78 P.2d 815; and Sharp v. Kelsey, 184 Okl. 288, 86 P.2d 994. We cannot say as a matter of law that it was error to overrule the plaintiff's motion for a directed verdict or his demurrer.

In this analysis of the evidence we have concluded that under the Commercial Code, supra, in Oklahoma the plaintiff took the checks "for value" as a matter of law. However, the court did not instruct the jury to this effect. The determination of whether the plaintiff was a holder in due course was a technical decision, and the jury should have been more clearly instructed as to the three requirements for being a holder in due course. The jury also should have been instructed that the first requirement, taking for value, was legally satisfied by the plaintiff. However, we have held that the general inadequacy of instructions is not a sufficient ground for appeal unless the appealing party has requested the trial court to present instructions that were sufficient. See Sarkeys v. Haas, Okl., 402 P.2d 894; Empire Oil & Refining Co. v. Fields, 188 Okl. 666, 112 P.2d 395. In this case the plaintiff requested only one instruction which was not given, and has raised the question of the failure to give this instruction as a basis for its appeal. The requested instruction was as follows:

"You are instructed that when a bank receives a negotiable check and deposits the same for immediate credit that they become innocent purchasers for value to the extent of sums paid out of said account before notice of dishonor provided that said bank is a holder in due course as defined in these instructions."

The instruction apparently seeks to advise the jury that the bank was a purchaser "for value." However, the instruction requested by the plaintiff was not a perfect one; it would require some modification. Even though this be true, the court should have directed the jury to find that the bank had taken the items for value. The general rule is that to entitle a party to insist that a requested instruction be given the jury, such instruction must be correct both in form and in substance and such that the court may give to the jury without modification or omission. See Smith et al. v. Pulaski Oil Co. et al., 88 Okl. 47, 211 P. 1047 and Magnolia Petroleum Co. v. Barnes, 198 Okl. 406, 179 F.2d 132. However, there is an exception to this general rule. Where a party requests an instruction on a material issue, though that instruction is not in correct, proper form, a correct instruction upon such issue should be given by the court. It is the duty of the court to submit the theories of the parties on material issues. Thompson v. Galion Iron Works & Mfg. Co., 201 Okl. 182, 203 P.2d 438; Swafford v. Vermillion, Okl., 261 P.2d 187.

In this case the jury had to determine whether the plaintiff was a holder in due course, and there were three elements that the plaintiff had to satisfy to be such a holder. The jury should have been instructed as to each of these elements, and should have been advised that plaintiff had satisfied the first element of taking "for value." Some of the instructions given by the court indicated that taking for value was an issue, and the instructions went further and stated that the bank would be taker "for value" to the extent it had a security interest in the checks. The instructions failed to provide the necessary means for defining a security interest, and in any event the trial court should have instructed the jury on this element. The element of "taking for value" was very material to the plaintiff's case. The court erred in failing to instruct the jury properly as to that element.

The judgment is reversed and the case remanded to the trial court for a new trial.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BERRY and HODGES, JJ., concur.

IRWIN and LAVENDER, JJ., dissent.

The Court acknowledges the services of J. JERRY DICKMAN, who with the aid and counsel of GEORGE BOWEN and JOHN L. ARRINGTON, Jr., as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to BERRY, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.